**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**TONY C. FRANKLIN,**

            **Plaintiff,**

            v.                                           Case No. 14-CV-1188

**WILLIAM WARMINGTON AND
CITY OF RACINE,**

            **Defendants.**

---

**ORDER**

---

Plaintiff Tony C. Franklin is proceeding on Fourth Amendment claims against defendants William Warmington and the Racine Police Department regarding an incident that took place on May 17, 2007. The defendants argue that they are entitled to summary judgment because Franklin failed to file his complaint for claims under 42 U.S.C. § 1983 before the six-year statute of limitations expired. The defendants also argue in their reply brief that the court should grant their motion for summary judgment and impose monetary sanctions on Franklin because Franklin submitted a false affidavit in opposition to their motion for summary judgment.

**Request for Sanctions**

The court takes fraud on the court seriously and has inherent power to sanction a party who "has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (citations omitted). "Dismissal can be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." *Id.*

Yet "[d]epriving the parties of a merits disposition is serious business." *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 739 (7th Cir. 1998). "In the normal course of events, justice is dispensed by the hearing of cases on their merits; only when the interests of justice are best served by dismissal can this harsh sanction be consonant with the role of the courts." *Id.* at 740 (quoting *Schilling v. Walworth County Park and Planning Com'n*, 805 F.2d 272, 275 (7th Cir. 1986)). The parties have fully briefed the defendants' motion for summary judgment and the court will consider the motion on its merits.

**Summary Judgment Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable

substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

**Facts**

On May 17, 2007, Franklin was a passenger in a vehicle driven by Michelle Warmington when her then-husband, William Warrington, an officer with the Racine Police Department, stopped them. According to Franklin, Officer Warmington opened the passenger door of the vehicle, grabbed Franklin by the arm, yanked him out of the vehicle, and slammed him onto the sidewalk. Officer Warmington then threatened to

kill Franklin while he placed his knee on Franklin's back, emptied Franklin's pockets, and patted him down.

In the days and weeks that followed the incident, Franklin declares, "people kept coming up to me saying that I had better watch out because Warmington was looking for me and that he was telling people in my neighborhood that he was going to kill me for messing with his wife." (ECF No. 88 at 4.) Franklin began carrying a knife for protection from Officer Warmington.

Franklin was arrested in June 2007. Several inmates told Franklin that Warmington had asked about Franklin and said he was going to kill Franklin for messing with his wife. Franklin subsequently "got revoked and went to prison," where another inmate advised Franklin to file a formal complaint against Warmington. (ECF No. 88 at 5.) Franklin wrote down what happened and sent it to the Racine Police Department. He received a response stating that Warmington had violated the rules of the Racine Police Department and that corrective action had been taken.

Franklin was released from prison for several months in 2008 and was anxious about Warmington's threats. While out of custody, Franklin "tried to stay inside so it wouldn't get around to Warmington that [he] was out." (ECF No. 88 at 6.) Franklin "caught a new case in November of 2008" and has been in prison ever since. *Id.*

It is unclear exactly when Warmington stopped working for the Racine Police Department, but he began working as a police officer in Florida in August 2009.

4

In June 2014 Franklin was in the segregation unit at Waupun Correctional Institution. He told another inmate what happened in 2007 and realized he could not find the letter he received from the Racine Police Department in response to his complaint. On June 14, 2014, Franklin wrote to the Racine Police Department and asked for a copy of the letter. Less than two weeks later he received a copy of the letter in the mail along with a business card from a lieutenant in the Racine Police Department that had a message written on the back telling Franklin that Warmington was no longer with the Racine Police Department. Franklin then found out from Michelle Warmington that William Warmington had moved to Florida and was about to get remarried.

Plaintiff filed his complaint in this case on September 25, 2014.

**Analysis**

The defendants argue that they are entitled to summary judgment because Franklin filed his complaint after the time allowed by the applicable statute of limitations. The statute of limitations for claims brought in Wisconsin under 42 U.S.C. § 1983 is six years. *Wudtke v. Davel*, 128 F.3d 1057, 1061 (7th Cir. 1997); Wis. Stat. § 893.53. The incident giving rise to Franklin's claims occurred on May 17, 2007, and more than seven years passed before Franklin filed his complaint in this case. The statute of limitations is procedural rather than jurisdictional, which means that it is subject to, among other things, equitable estoppel. *See Smith v. City of Chicago Heights*, 951 F.2d 834, 838-39 (7th Cir. 1992).

Anticipating Franklin's argument, the defendants assert that equitable estoppel does not relieve Franklin from the application of the statute of limitations because there is no evidence that William Warmington took "active steps to prevent the plaintiff from suing in time." *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990). Even where the statute of limitations arises from state law, federal estoppel law controls and "focuses on whether the defendant acted affirmatively to stop or delay the plaintiff from bringing suit within the limitations period." *Smith*, 951 F.2d at 841.

As the defendants anticipated, Franklin argues that equitable estoppel prevents the defendants from raising a statute of limitations defense because Warmington threatened him after the incident. Franklin argues that *Cook v. City of Chicago*, No. 06-C-5930, 2014 WL 4493813 (N.D. Ill. Sept. 9, 2014), where the court applied equitable estoppel to toll the Illinois two-year statute of limitations, is analogous to his case. He contends that he filed his complaint within three months of learning that Warmington was no longer with the Racine Police Department and had moved to Florida.

In *Cook*, the officers beat the plaintiff when he threatened to call 911, threatened that they would take his girlfriend's children away, threatened to get the plaintiff fired, and threatened to frame him by planting something in his car. The threats were repeated by the officer investigating the complaint plaintiff made about the officers' conduct. *Id.* at *2, 4-5. The court emphasized that the officers made express threats intended to prevent the plaintiff from calling 911 or seeking redress and later to drop

6

his complaint. *Id.* at *5. Additionally, "[t]hese threats were entirely distinct from the officers' other alleged unlawful conduct." *Id.*

In contrast, the threats Franklin heard through the grapevine warned him to stay away from Warmington's wife; they had nothing to do with Franklin lodging a complaint about Warmington's conduct. Franklin does not allege that Warmington threatened him in any way as a result of Franklin having lodged a complaint about him with the Racine Police Department or tried to dissuade Franklin from filing future complaints against him.

No reasonable jury could conclude that threats Franklin heard second hand, allegedly attributable to Warmington, intended to intimidate Franklin into staying away from Warmington's wife, constituted affirmative actions by Warmington "to stop or delay [Franklin] from bringing suit within the limitations period." *Id.* Indeed, notwithstanding the alleged threats, Franklin filed a complaint against Warmington with the City of Racine police chief on August 27, 2007. Moreover, Franklin had no contact with Warmington subsequent to the incident on May 17, 2007, and Franklin has been incarcerated since November 2008.

Warmington began working as a police officer in Florida in August 2009. Although Franklin states that he filed the lawsuit as soon as he found out that Warmington no longer worked for the Racine Police Department, he offers no explanation for waiting until 2014 to ask about Warmington's status. Nothing

prevented Franklin from inquiring about Warmington's status earlier so that he could file his complaint within the statute of limitations.

For the reasons discussed above, the court will not apply equitable estoppel to allow Franklin's untimely complaint to proceed. Because Franklin failed to file his complaint within six years of the incident with Warmington, the court will grant the defendants' motion for summary judgment.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 69) is **granted**, and this case is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 18th day of January, 2017.

WILLIAM E. DUFFIN
U.S. Magistrate Judge